**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **LAVERNE ROBINSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **No. 20 C 4670** |
| **v.** ) | |
| ) | **Judge Rebecca R. Pallmeyer** |
| **AETNA LIFE INSURANCE CO., and** ) | |
| **MONDELEZ GLOBAL LLC** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Laverne Robinson seeks payment of long-term disability ("LTD") benefits that she believes are owed to her under the terms of an employee benefit plan. Robinson's LTD plan is underwritten and administered by Aetna Life Insurance Company ("Aetna") for the benefit of employees of Mondelez Global LLC ("Mondelez"). Robinson brings this civil action against Aetna and Mondelez, her former employer, under Section 502(a)(1)(B) of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Defendants have moved to dismiss to the Complaint under FED. R. CIV. P. 12(b)(6). Specifically, Defendants argue that under the terms of the plan, Robinson has become ineligible for continued LTD benefits because she was not awarded Social Security disability benefits within 24 months of her initial receipt of LTD benefits. Defendants contend, as well, that the court should dismiss the suit as time-barred. For the reasons set forth below, the motion is granted with respect to Defendant Mondelez, and otherwise denied.

## BACKGROUND

At this stage of the proceedings, the court accepts the factual allegations in the Complaint as true. Beginning in 2005, Plaintiff worked for Mondelez as a full-time Machine Operator, a

skilled and medium-exertion level occupation.  (Compl. [1] ¶ 12.)[1]  Robinson has a history of various cardiac impairments that have required her to undergo multiple open-heart surgeries, a mitral valve replacement, and implantation of a pacemaker.  (*Id.* ¶ 13.)  As a result of those permanent and debilitating conditions, Plaintiff ceased working on April 29, 2016 and has not returned to work in any capacity.  (*Id.* ¶¶ 14, 47.)  Mondelez terminated her employment effective October 31, 2018.  (*Id.* ¶ 14.)  Beginning months earlier, and continuing for years, Robinson filed claims for disability benefits and multiple appeals from denials of those claims, as described below.

As a benefit of her employment and union membership, Plaintiff was entitled to LTD coverage under the Mondelez Global LLC Employee-Paid Group Benefits Plan ("Plan").  (*See* Plan, Ex. B. to Compl. [1-2].)[2]  The Plan is sponsored by Mondelez and underwritten and administered by Aetna.  (Compl. ¶ 10.)  For six months after she ceased work, Robinson received short-term disability ("STD") benefits until on or around October 29, 2016.  (*Id.* ¶ 15.)  Following her exhaustion of STD benefits, she received LTD benefits for 24 months, beginning on October 30, 2016 and continuing until October 30, 2018.  (*Id.* ¶¶ 16, 27–28.)  The Summary Plan Description ("SPD") refers to this combined 30-month period as "Own Occupation" disability, meaning that an employee is "continuously unable to perform the Material and Substantial Duties" of the occupation the employee had when she stopped working due to injury or sickness.  (SPD, Ex. A to Compl. [1-1] at 12; *id.* at 7 (defining "Own Occupation").)[3]  To qualify for "Any Occupation"

---

[1]     The record does not reveal the nature of Mondelez's business, but the court understands the company is a snack food manufacturer.  *See generally* MONDELEZ INTERNATIONAL, https://www.mondelezinternational.com/ (last visited Sept. 13, 2021).

[2]     The court may consider exhibits attached to a complaint when deciding a motion to dismiss under Rule 12(b)(6).  *See* FED. R. CIV. P. 10(c); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

[3]     The parties refer to the SPD and the Plan itself somewhat interchangeably and have not identified any inconsistencies between the two.  Accordingly, the court will refer to both documents as "the Plan."  *Cf. Schwartz v. Prudential Ins. Co. of America*, 450 F.3d 697, 699 (7th Cir. 2006) ("When [ ] the plan and the summary plan description conflict, the former governs,

disability and continue receiving LTD benefits, Robinson needed to satisfy several conditions set

forth in the Plan.  The relevant provision states:

> **After 30 Months of Disability**
> **"Any Occupation"** Disability (applies after the end of the "Own Occupation"
> disability period)
> After you have been determined by the [Disability Claims Administrator (DCA),
> here Aetna] to have been disabled under the LTD Plan for 30 months, (the 6 month
> [STD] period followed by the initial 24 months of LTD) you will be considered
> disabled for LTD Plan purposes if, due to a physical impairment caused by an
> Injury or Sickness the DCA determines that:
>   - You are continuously unable to engage in Any Occupation that provides
>     you with a salary of at least 60% of your Pre-Disability Earnings, and exists
>     within your geographic area
>     AND
>   - You are not Gainfully Employed, except for partial disability or rehabilitative
>     employment for which you have Disability Earnings
>     AND
>   - *You must be receiving Social Security Disability Income (SSDI) benefits by*
>     *the end of the 24th month of LTD in order to be considered disabled beyond*
>     *the first 24 months of LTD.*

(SPD at 12 (emphasis added).)  Although Robinson had applied for SSDI benefits in January

2017, she was not yet "receiving" those benefits by October 30, 2018 because her SSDI claim

was still pending.  (Compl. ¶ 27.)  Aetna terminated Plaintiff's LTD benefits on October 30, 2018,

citing the Plan provision quoted above.  (*Id*. ¶¶ 27–28.)  Robinson nonetheless contends that the

fact that she was not receiving SSDI benefits by October 2018 should not bar her from recovering

plan benefits because, on March 27, 2020, the Social Security Administration ("SSA") ultimately

did conclude that she was entitled to SSDI benefits.  (*Id*. ¶ 44.)  In that March 2020 award, the

SSA retroactively deemed her disabled effective April 30, 2016 and concluded that she was

entitled to SSDI benefits beginning October 1, 2016.  (*Id*.)

As noted, Plaintiff began the application process for SSDI benefits in January 2017, but it

took more than three years before the SSA found that she was entitled to benefits.  (*Id*. ¶¶ 20,

44.)  On October 28, 2016, when Plaintiff had almost exhausted her six months of STD benefits,

---

being more complete . . . unless the plan participant or beneficiary has reasonably relied on the
summary plan description to his detriment.") (quoting *Health Cost Controls of Illinois, Inc. v.
Washington*, 187 F.3d 703, 711 (7th Cir.1999)).

Aetna informed Plaintiff that Allsup, a third-party vendor that assists insureds in applying for SSDI benefits, would review her SSDI claim and determine whether to represent her. (*Id*. ¶ 17.) On November 3, 2016, Aetna learned that Allsup had declined to represent Robinson, but Aetna did not inform her of Allsup's decision. (*Id*. ¶ 18.) On January 9, 2017, Plaintiff called Aetna to ask whether a vendor would contact her to assist with her SSDI claim. (*Id*. ¶ 19.) On January 11, Aetna returned her call and provided her with Allsup's phone number, but Aetna evidently did not notify Plaintiff that Allsup had declined to represent her. (*Id* ¶ 20.) During the January 11 call, Plaintiff informed Aetna that she had applied for SSDI benefits on her own on January 10. (*Id*.) On August 22, 2017, Plaintiff informed Aetna that the SSA had denied her SSDI claim but that she intended to continue pursuing it. (*Id*. ¶ 21.) On August 31, for reasons that are unclear from the Complaint, Allsup determined that Robinson was a viable candidate for SSDI claim assistance and commenced its representation of her claim on or around October 16, 2017. (*Id*. ¶¶ 22–23.) Allsup filed a new SSDI application on Plaintiff's behalf on October 30, 2017. (*Id*. ¶ 23.)

The SSA issued an initial denial of Plaintiff's SSDI claim (the one filed by Allsup) on February 8, 2018. (*Id*. ¶ 24.) Allsup agreed to represent Plaintiff in her request for reconsideration of that decision, but the effort was unsuccessful; on May 19, 2018, the SSA denied her request for reconsideration. (*Id*. ¶ 25.) On May 30, Plaintiff requested a hearing before an administrative law judge.[4] (*Id*. ¶ 26.) While Plaintiff's SSDI claim was still pending, Aetna notified Robinson on September 24, 2018 that it planned to terminate her benefits effective October 30, 2018, "based exclusively on the Plan provision requiring that Plaintiff be receiving SSDI benefits within the first 24 months of her receipt of LTD benefits." (*Id*. ¶ 27.) The Plan provides for two levels of appeal with Aetna for exhaustion purposes before a participant may file a civil action under ERISA. (SPD at 22–23.) Robinson timely submitted a first-level appeal of Aetna's decision, but Aetna upheld

---

[4] The Complaint does not make clear whether Allsup supported Plaintiff in making this request for a hearing.

its termination decision on April 10, 2019. (Compl. ¶¶ 28–29.) On April 11, Allsup informed Aetna that Plaintiff's SSDI hearing was scheduled for August 5, 2019. (*Id*. ¶ 30.) Plaintiff, through counsel, requested that Aetna toll the deadline for her second-level LTD benefit appeal, which was set to expire on June 9, 2019, until after the hearing.[5] (*Id*. ¶ 31.) Hartford Life and Accident Insurance Company ("Hartford"), which had acquired Aetna and begun administering Plaintiff's LTD claim, denied that request. (*Id*. ¶ 32.) Plaintiff then timely submitted a second-level appeal, and Plaintiff's counsel requested that Hartford toll its review of her claim until October 31, 2019 so that the SSA would have more time to render a decision. (*Id*. ¶ 33.) Hartford denied this second tolling request, as well, and upheld its prior termination of benefits decision on June 30, 2019. (*Id*. ¶ 34.) Once again, Hartford's decision was based exclusively on the Plan provision requiring that Robinson be receiving SSDI benefits by the end of her 24th month of LTD benefits.

Hartford informed Plaintiff that she had a right to bring a civil action under ERISA, or that she could file a "voluntary appeal" with Mondelez's benefits department. (*Id*.) On September 19, 2019, Plaintiff submitted a voluntary appeal to the benefits department. (*Id*. ¶ 40.) The Complaint does not specify what arguments Plaintiff made in this appeal. On October 9, 2019, an unidentified representative of Mondelez informed Plaintiff that Mondelez would not address her appeal but suggested that she "appeal this decision with Hartford again, or possibly inquire about a next-level appeals process with them." (*Id*. ¶ 41.) Plaintiff's counsel wrote to Hartford on November 1, 2019, requesting that it consider her voluntary appeal in light of Mondelez's refusal to do so. (*Id*. ¶ 42.) Hartford responded on March 4, 2020 that it would take no further action on Plaintiff's claim, which Hartford stated was "being handled by Mondelez," and that Plaintiff had exhausted her administrative remedies. (*Id*. ¶ 43.) Then on March 27, 2020, the SSA informed Robinson that she was entitled to SSDI benefits and retroactively deemed her disabled effective April 30, 2016. (*Id*. ¶ 44.)

---

[5] The Complaint does not state when Plaintiff retained counsel or whether counsel ultimately represented her at the SSDI hearing.

Plaintiff filed this suit on August 7, 2020 under Section 502(a)(1)(B) of ERISA, codified at 29 U.S.C. § 1132(a)(1)(B).  She contends that Defendants failed to meet their fiduciary obligations under ERISA by engaging in a "meaningless appeals process" and refusing to toll her appeal until the SSA reached a decision on her SSDI claim.  (*Id*. ¶ 46.)  Furthermore, she argues that the SSA's retroactive award of SSDI benefits effectively satisfies the Plan's requirement that she "be receiving" SSDI benefits by the end of her 24th month on LTD.  (*Id*. ¶ 47.)  Plaintiff requests all past due LTD benefits to which she is entitled under the Plan, along with prejudgment interest. (Compl. at 10.)  She also seeks an order that Defendants maintain her benefits, so long as she continues to meet the Plan's terms and conditions, until her 65th birthday.  (*Id*.)

Defendants note that this is the second lawsuit Plaintiff has filed challenging the denial of LTD benefits under the Plan.  (Defs.' Mem. in Support of Mot. to Dismiss (hereinafter "Defs.' Mem.") [16] at 3.)  Robinson's first suit was against Hartford, rather than Aetna, and she did not name Mondelez as a Defendant.[6]  On August 6, 2020, Plaintiff moved for voluntary dismissal of that case under FED. R. CIV. P. 41(a)(1), and Judge Gettleman granted the motion, dismissing that earlier case without prejudice.[7]  Robinson filed this suit the next day.  Because the dismissal of her first suit was without prejudice, the court rejects Defendants' suggestion that Plaintiff's decision to name Aetna and Mondelez as defendants in this suit was somehow nefarious.  (*See* Defs.' Mem. at 4.)  For simplicity, and because defense counsel does not challenge the propriety of naming Aetna as a Defendant,[8] the remainder of this opinion will refer to Hartford as Aetna.

---

[6]    *See* Compl., *Robinson v. Hartford Life & Accident Ins. Co.*, No. 20-cv-2383 (N.D. Ill. Apr. 17, 2020).  The court may take judicial notice of public records, including court filings.  *See* Fed. R. Evid. 201(b).

[7]    *See* Notice of Voluntary Dismissal, *Robinson v. Hartford Life & Accident Ins. Co.*, No. 20-cv-2383 (N.D. Ill. Aug. 6, 2020); Minute Entry, *Robinson v. Hartford Life & Accident Ins. Co.*, No. 20-cv-2383 (N.D. Ill. Aug. 6, 2020) ("[P]ursuant to Federal Rule of Civil Procedure 41(a)(1), this case is dismissed without prejudice.").

[8]    Indeed, Defendants state: "All parties including Robinson agree that Aetna is a proper party to her claim for benefits under 29 U.S.C. § 1132(a)(1)(B)."  (Reply [24] at 15.)

6

## LEGAL STANDARD

To survive a motion to dismiss under FED. R. CIV. P. 12(b)(6), a complaint must contain "enough factual matter (taken as true)" to suggest that a plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Courts generally "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## DISCUSSION

Defendants move to dismiss Plaintiff's Complaint on three grounds. First, Defendants argue that Plaintiff failed to satisfy the Plan's "Any Occupation" definition of disability because she was not receiving SSDI benefits by the end of her 24th month on LTD benefits. Second, Defendants argue that her Complaint is time-barred because she did not file suit within one year of the date of Aetna's decision on her last appeal. Finally, Defendants contend that Mondelez is not a proper defendant under 29 U.S.C. § 1132(a)(1)(B) because Mondelez is not responsible for payment of LTD benefits.

### I.  Merits

Defendants contend that the plain language of the Plan defeats Plaintiff's claim: she was not yet "receiving" SSDI benefits by the end of her 24th month on LTD benefits. The Plan states: "You must be receiving [SSDI] benefits by the end of your 24th month of LTD in order to be considered disabled for LTD purposes beyond the first 24 months of LTD." (SPD at 12.) This requirement appears three additional times in the SPD. (*Id*. at 4, 10, 11.) Robinson received LTD benefits for 24 months, from October 30, 2016 to October 30, 2018. (Compl. ¶¶ 10, 27.) Because Robinson did not begin receiving SSDI until after March 27, 2020 (*id*. ¶ 44), Defendants argue that she is no longer eligible for LTD benefits. Plaintiff responds that the Plan is silent as to retroactive awards of SSDI benefits, and any ambiguity in the Plan should be construed against

the insurer.  (Opp'n [20] at 7–8 (citing *Ruttenberg v. U.S. Life Ins. Co.*, 413 F.3d 652 (7th Cir. 2005).)  According to Plaintiff, the SSA's determination that she was eligible for SSDI beginning October 1, 2016 satisfies the Plan's requirements for continued receipt of LTD benefits.

### A.  Retroactive Award Theory

As a general matter, "the rule that contractual provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA welfare benefits plan." *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015) (citation and alterations omitted).  The terms of a plan are "given [their] plain and ordinary meaning, and the plan must be read as a whole, considering separate provisions in light of one another and in the context of the entire agreement." *Est. of Jones v. Children's Hosp. & Health Sys. Inc. Pension Plan*, 892 F.3d 919, 923 (7th Cir. 2018) (quoting *Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012)). District courts review a denial of benefits determination *de novo* "unless the plan grants to the plan administrator the discretionary authority to construe policy terms." *Ruttenberg*, 413 F.3d at 659 (citing *Firestone Tire & Rubber Co. v. Bunch*, 489 U.S. 101, 115 (1989)).  If a plan grants such discretion to its administrator, courts apply a deferential "arbitrary and capricious" standard, meaning that "the reviewing court must ensure only that a plan administrator's decision has rational support in the record." *Est. of Jones*, 892 F.3d at 923 (citations omitted).  "The requirement that [courts] give deference to the plan administrator's interpretation is especially applicable when plan language is ambiguous, for that is precisely when the administrator exercises his grant of discretion." *Est. of Jones*, 892 F.3d at 926 (quoting *Hess v. Reg-Ellen Mach. Tool. Corp.*, 423 F.3d 653, 662 (7th Cir. 2005)).

The Plan's definition of "Any Occupation" disability is not, at first glance, ambiguous.  The use of the present-tense phrase "must be receiving" suggests that a plan participant is not eligible for LTD benefits unless the participant begins to receive SSDI within 24 months.  (SPD at 12.) The provision is silent as to the effect of retroactive SSDI awards on eligibility for LTD benefits, however, and the Plan clearly grants the plan administrator the discretionary authority to construe

policy terms. (*See* SPD at 24 ("The Plan Administrator has complete discretionary authority to interpret and construe the terms of the Disability Plan . . . .").) The Plan identifies "Mondelez Global LLC Administrative Committee" as the Plan Administrator and Aetna as the Disability Claims Administrator ("DCA"). (SPD at 25.) The Plan further grants the DCA "full discretionary authority over benefit determinations." (*Id*.) Thus, the court will apply an arbitrary and capricious standard of review to Defendants' denial of benefits determination.

Plaintiff disputes the application of the arbitrary and capricious standard of review in this case, pointing to an Illinois insurance regulation that prohibits health insurers from reserving discretion to interpret the terms of policies offered or issued within Illinois. *See* 50 Ill. Admin. Code § 2001.3. The Seventh Circuit has held that § 2001.3 is not preempted by ERISA. *Fontaine v. Metro. Life Ins. Co.*, 800 F.3d 883, 886 (7th Cir. 2015). Defendants contest the relevance of this provision, arguing that it applies only to insured plans, not employee-funded plans like Plaintiff's. (Reply [24] at 8–9.) In any event, Defendants assert, their motion "does not turn on the ERISA standard of review." (*Id*. at 8.) The court agrees with that assertion, but not with Defendants' ultimate conclusion.

Even under a deferential arbitrary and capricious standard of review, Defendants' interpretation of the Plan's eligibility requirements for LTD benefits was not reasonable. Their reading would deny Plaintiff benefits to which she was otherwise entitled for a reason over which she had no control: the fact that the SSA took more than 24 months to process her claim. Defendants themselves concede that the SSA disability process "might take many years, as it did in Robinson's case." (*See* Defs.' Mem. at 11.) Consider two claimants, identical in every respect and equally physically challenged. Both seek SSDI benefits. One receives them promptly and the other, due to administrative delays at the SSA, does not. To deny the second claimant disability benefits under an ERISA plan seems, in the court's view, clearly arbitrary and capricious. This is not a case where plan administrators, having concluded that a claimant is not disabled, are asked to reconsider their finding because the Social Security Administration has ruled

otherwise.  At least as alleged in the complaint, Plaintiff does meet all of the requirements for benefits, save one over which she has no control.  Where, as in this case, a claimant is otherwise eligible for benefits, but the Plan's terms make receipt of SSDI benefits dispositive, plan administrators may not turn a blind eye to a favorable award that comes after the Plan's file is closed.

Defendants cite to an unreported, out-of-circuit case as an example of a court rejecting Plaintiff's theory that the SSA's award of benefits should have retroactive effect on her claim for disability benefits under an ERISA plan.  *See Northrup v. Penford Prods. Co.*, No. C05-0012-LRR, 2006 WL 753218 (N.D. Iowa, Mar. 23, 2006).  This court reads that case differently.  In *Northrup*, an employee was terminated from his employment for falsifying records and lying to his supervisors.  *Id*. at *5.  He later applied for Social Security disability benefits and, in awarding those benefits, the SSA determined that he had become disabled, due to a variety of mental health conditions, approximately one week before his termination.  *Id*.  Several years after his termination, the now-former employee sought disability benefits from his former employer, which informed him that he was not eligible because he had been terminated.  *Id*.  Aetna and Mondelez are correct that the plan at issue in *Northrup* conditioned receipt of disability benefits upon receipt of SSDI benefits, *id*. at *2, but the basis for the employer's denial of benefits was that the plaintiff was no longer an employee, not the plaintiff's inability to obtain SSDI benefits within a pre-determined period of time.  *Id*. at * 16 ("Northrup simply is not entitled to benefits because he was not an employee at the time he began receiving Social Security Disability payments.")  *Northrup* is therefore distinguishable from this case; although Robinson ceased work in April 2016, she was not terminated until October 2018, when the 30-month "Own Occupation" period expired.  Had the plaintiff in *Northrup* remained an employee but taken a leave of absence due to his disability, as Robinson did, he likely would have been eligible for benefits because he satisfied the remaining terms of the plan.  *Id*. at *9.

**B. Fiduciary Duty**

Defendants also ask the court to reject Plaintiff's alternative theory of liability: that Defendants violated their fiduciary duties under ERISA by refusing to toll her internal appeals until after her SSA hearing. (Opp'n at 9.) According to Robinson, "Defendants' haphazard and self-serving administration of [her] LTD benefit claim deprived her of the opportunity to resolve her deficient administrative record," by which she apparently means the SSA's final decision in her favor. (Opp'n at 10.) Defendants' "repeated interference with and delay of" her SSDI application "made it impossible" for her to obtain SSDI benefits within 24 months. (*Id.*) Defendants counter that they are not responsible for the SSA's protracted consideration of her claim, and tolling would not have changed the fact that she was not receiving SSDI benefits by October 30, 2018. (Reply at 10.)

Plaintiff has suggested that Defendants are in fact responsible for the SSA delays, in that Aetna and/or Allsup provided inadequate assistance her with SSDI application. She also argues that Aetna should have tolled its review of her internal appeal until after an administrative law judge had reviewed her claim. The court is not moved by the first argument; there is no obvious basis for the conclusion that Robinson would have received a favorable disability determination from the SSA within 24 months of being on LTD, had Allsup begun assisting her with her SSDI claim sooner. Both SSDI applications—the one that Robinson filed on her own and the one that Allsup filed on her behalf—were denied, suggesting that Allsup's assistance or lack thereof was irrelevant. The SSA ultimately concluded that she was eligible for SSDI in March 2020—two and a half years after Allsup filed her application, and one and a half years after the Plan's October 30, 2018 deadline for receiving SSDI benefits.[9]

---

[9]    Moreover, although the parties did not brief this point, the Seventh Circuit has observed that suits for interference with a person's opportunity to become eligible for plan benefits are properly brought under ERISA § 502(a)(3), not § 502(a)(1)(B). *See Ponsetti v. GE Pension Plan*, 614 F.3d 684, 695–96 (7th Cir. 2010) (calling plaintiff's attempt to sue ERISA plan for breach of fiduciary duty under § 502(a)(1)(B) a "novel theory").

Plaintiff's second argument is that the Plan "explicitly permits" the indefinite tolling of an appeals period when, as here, a plan participant is awaiting review of an adverse SSA decision. (Opp'n at 11.) The Plan language she cites, however, applies to situations in which the administrator actively requests additional information from the claimant that is necessary to decide an appeal. The Plan states: "If such an extension is necessary due to a failure of the Claimant to submit the information necessary to decide the Claim, the period in which the Claims Administrator is required to make a decision will be tolled from the date on which the Notification is sent to the Claimant until the Claimant adequately responds to the request for additional information." (Plan at 27.) The text of this provision suggests that the Plan tolls deadlines for the administrator, not the claimant, when the claimant fails to submit essential information. The Plan does not explicitly impose a duty to toll deadlines for a claimant whenever an administrator is on notice that a final decision from the SSA is pending.

The absence of such an explicit duty does not, however, satisfy the court that a plan administrator may never waive a deadline that a claimant is unable to meet. The caselaw Defendants cite does not support such a harsh interpretation. In *Fessenden v. Reliance Standard Life Ins. Co.*, the Seventh Circuit enforced an administrative deadline that favored the plan beneficiary, not the administrator. *See* 927 F.3d 998, 1000 (7th Cir. 2019) (rejecting plan administrator's request that it be excused from missing deadline for deciding beneficiary's long-term disability benefits claim and denying administrator the benefit of deferential arbitrary and capricious review). And in *Edwards v. Brigg & Stratton Ret. Plan*, the court merely concluded that a beneficiary who failed to timely appeal a denial of benefits had not exhausted her administrative remedies. 639 F.3d 355, 362 (7th Cir. 2011) (declining to extend the substantial compliance doctrine to excuse claimant from ERISA's exhaustion requirement). These cases are not inconsistent with the conclusion that a plan administrator may, in its discretion, waive a deadline in favor of a claimant.

The parties disagree over the proper interpretation of *Reich v. Ladish Co.*, where the Seventh Circuit held that a former employee was entitled to disability benefits, even though his claim for SSDI benefits was still pending at the time his employment terminated. 306 F.3d 519, 525 (7th Cir. 2002). The plan administrator in *Reich* argued that only current employees were eligible for disability benefits, and the plaintiff was no longer an employee at the time of the administrator's benefits determination. *Id*. at 521. The Seventh Circuit rejected the administrator's interpretation as arbitrary and capricious because, elsewhere in the same plan, current employment was not a prerequisite to receiving retirement benefits. *Id*. at 525. Moreover, the plan unambiguously provided that the former employee was entitled to disability benefits beginning on the date of the SSA's disability determination. *See id*. ("The parties agree that the appropriate date is April 2, 1998, and that Reich is not entitled to accrued benefits before that date even though the SSA's decision was retroactive to August 22, 1994."). The plan at issue in *Reich* is distinguishable from Robinson's, which does not contain these features. But the Plan does make receipt of SSDI benefits a requirement for continued receipt of disability benefits. The timing of such an award is beyond the claimant's control. In these circumstances, it may well be incumbent upon an administrator to await a final SSA determination.[10]

\* \* \*

Plaintiff has argued that plan administrators have a fiduciary duty to toll deadlines indefinitely pending a disability determination from the SSA. Whether or not that theory has merit, the court concludes that Plaintiff has stated a claim for LTD benefits under the terms of the Plan itself. Because the SSA concluded that she was entitled to SSDI benefits beginning October 1,

---

[10]    Plaintiff also cites a number of cases that purportedly recognize an obligation on the part of a plan administrator to seek out additional information—such as an SSA disability determination—before making its own benefits determination. *See Reipsa v. Metro. Life Ins. Co.*, No. 1 C 3407, 2002 U.S. Dist. LEXIS 13188, \*17–18 (N.D. Ill. June 11, 2002); *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 636 (9th Cir. 2009); *Culver v. NXP USA Inc. Long Term Disability Ins. Plan*, 391 F. Supp. 3d 902, 907 (D. Ariz. 2019); *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807 (10th Cir. 2004). The court need not discuss these cases at length because it concludes that Plaintiff has stated a claim for relief under the terms of the Plan itself.

2016, she effectively became eligible for continued receipt of LTD benefits within the Plan's 24-month window.  Defendants' contrary interpretation of the Plan is unreasonable, even under a deferential arbitrary and capricious standard of review.  Accordingly, the court denies Defendants' motion to dismiss her claim on the merits.

## II.      Time Bar

As a second basis for dismissal, Defendants argue that Plaintiff's suit is time-barred. Courts generally uphold time limits in ERISA plans for filing legal actions as valid and enforceable. *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105–06 (2013) ("Absent a controlling statute to the contrary, a participant and a plan may agree by contract to a particular limitations period . . . as long as the period is reasonable.").  In *Heimeshoff*, the Supreme Court held that a contractual limitations provision for seeking judicial review of an insurer's denial of LTD benefits was enforceable, even though the limitations period started running before the insurer could complete its internal review of the claim.  *Id*. at 109–10.  The Court observed that "employers have large leeway to design disability and other welfare plans as they see fit," and that ERISA's "statutory language speaks of '*enforc[ing]*' the 'terms of the plan,' not of *changing* them."  *Id*. at 108 (citations and quotations omitted, emphasis in original).  Moreover, "even in the rare cases where internal review prevents participants from bringing § 502(a)(1)(B) actions within the contractual period, courts are well equipped to apply traditional doctrines that may nevertheless allow participants to proceed," such as waiver, estoppel, or equitable tolling.  *Id*. at 114–15.

Robinson's LTD Plan requires participants to pursue two levels of appeal to exhaust their administrative remedies.  (SPD at 23.)  According to the Plan's terms, "[a]ny civil action must be filed within one year after the date of the decision on the last level of appeal."  (*Id*.)  The court assumes that the Plan's reference to "last level of appeal" is synonymous with "second-level appeal," and Plaintiff does not argue otherwise.  Aetna notified Robinson of its decision regarding her second-level appeal on June 30, 2019.  (Compl. ¶ 34.)  But Plaintiff did not file her Complaint in this case until August 7, 2020, 38 days after June 30, 2020.  In response to the contention that

her claim is now barred, Plaintiff urges that the one-year time limit was tolled while she pursued voluntary appeals, first with Mondelez and then with Aetna. (Opp'n at 6.)

ERISA regulations provide that "any statute of limitations or other defense based on timeliness is tolled during the time that any such voluntary appeal is pending." 29 C.F.R. § 2560.503-1(c)(3)(ii). When Aetna denied Robinson's second-level appeal on June 30, 2019, it informed her that she could file a voluntary appeal with Mondelez's benefits department. (Compl. ¶ 34.) Plaintiff did so on September 19, 2019. (*Id*. ¶ 40.) Mondelez responded on October 9 (20 days later), declining to address her appeal and suggesting that she "appeal this decision with [Aetna] again, or possibly inquire about a next-level appeals process with them." (*Id*. ¶ 41.) Defendants argue that her voluntary appeal with Mondelez extended the deadline for filing suit by 20 days—until July 20, 2020 at the latest—so her suit was untimely filed on August 7. (Defs.' Mem. at 13.) But the relevant ERISA regulation also suggests that the deadline for filing suit was tolled while her voluntary appeal with Aetna was pending, between November 1, 2019 and March 4, 2020. (Compl. ¶¶ 41–42.) That would give her at least four additional months to file suit.

Defendants argue that ERISA regulations permit tolling while a voluntary appeal is pending only "[t]o the extent that a plan offers voluntary levels of appeal." 29 C.F.R. §§ 2560.503-1(c)(3). As explained above, the Plan grants authority to Aetna to decide initial LTD claims and two levels of administrative appeal. Defendants are correct that the Plan does not explicitly contemplate a third level of appeal with Aetna. (*See* SPD at 22–23.) Assuming the truth of the facts alleged in the Complaint, however, the court concludes that Plaintiffs' requests for reconsideration, first with Mondelez and then with Aetna, were voluntary appeals offered by the Plan because both Defendants informed her that she could file an additional voluntary appeal. (*See* Compl. ¶ 34 (Aetna informed Robinson that she could file a voluntary appeal with Mondelez's benefits department), ¶ 41 (Mondelez suggested that Robinson "appeal this decision with [Aetna] again, or possibly inquire about a next-level appeals process with them").) Defendants have not explained why the Plan contemplates voluntary appeals only with Mondelez,

15

but not with Aetna.  Accordingly, the court concludes that the limitations period was tolled for at least 4.5 months during the pendency of those appeals, rendering Plaintiff's suit timely.

### III.      Whether Mondelez is a Proper Defendant

Alternatively, Defendants argue that Mondelez is not a proper defendant in a suit for benefits under 29 U.S.C. § 1132(a)(1)(B).  According to Defendants, only the entity responsible for making payment (here, Aetna) is a proper defendant.[11]  (Defs.' Mem. at 14.)  The Plan names Aetna as the Disability Claims Administrator and vests it with discretionary authority to determine LTD benefit eligibility.  (*See* SPD at 6, 24–25.)  The Plan itself is funded solely by employee contributions, which are held in trust by the Mondelez Global LLC Group Benefits Trust-II, with JPMorgan Chase Bank as plan trustee.  (*Id*. at 25.)  Plaintiff counters that the Plan designates Mondelez as the "Plan Administrator," and plan administrators are subject to ERISA suits.  (Opp'n at 13–14 (citing *Mein v. Carus Corp.*, 241 F.3d 581 (7th Cir. 2001)).)[12]  Plaintiff further argues that "under *Mein*, Mondelez is a proper defendant under ERISA because it is the plan administrator, its benefits Plan is closely intertwined with the SPD, and the SPD lists Mondelez's address for service of legal process."  (Opp'n at 14 (citing *Mein*, 241 F.3d at 585).)

ERISA defines an "administrator" as "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; [or] (ii) if an administrator is not so designated, the plan sponsor; . . . ."  29 U.S.C. § 1002(16)(A).  ERISA further defines "plan sponsor" as "the employer in the case of an employee benefit plan established or maintained by a single employer."

---

[11]      Defendants appear to be relying on 29 U.S.C. § 1132(d)(2), which provides: "Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter."

[12]      Defendants respond that the Plan identifies "Mondelez Global LLC Administrative Committee," not Mondelez, as the "Plan Administrator."  (SPD at 25; Reply at 14.)  But the mailing address provided for the "Administrative Committee" is the same as the address provided for Mondelez itself—the only difference being that the Administrative Committee's address includes "c/o Benefits Department."  (SPD at 25.)  In any event, the court fails to see how this technicality alone means that Mondelez is not designated as the plan administrator.

29 U.S.C. § 1002(16)(B)(i). "As to the proper defendant against whom to make an ERISA claim, it may ordinarily be true that, especially in a suit for benefits, a plaintiff should name the plan as a defendant," rather than the employer or plan administrator. *Mein*, 241 F.3d at 584; *see also Feinberg v. RM Acquisition, LLC*, 629 F.3d 671, 673 (7th Cir.2011) ("The proper defendant in a suit for benefits under an ERISA plan is . . . normally the plan itself."). Yet the Seventh Circuit has allowed cases to proceed with an employer named as a defendant where the employer and the plan are "closely intertwined." *Mein*, 241 F.3d at 584–85 (collecting cases). Plaintiff is therefore correct that employers who act as plan administrators may be subject to ERISA suits. That said, Mondelez is not analogous to the employer in *Mein*. There, the Seventh Circuit held that an employer was subject to suit where "the exact relationship between [the employer] and the plan is not clearly set out in the plan documents." *Id*. at 585. The plan at issue in *Mein* was an employer-funded 401(k) plan, and there was no insurance company acting as administrator of the plan. *Id*. at 583–84. Here, by contrast, the Plan is funded by employee contributions held in trust, and the terms state that all benefits "shall be paid or provided for solely by the Trust." (Plan at 11.) Confusingly, Robinson's Plan designates two administrators: Aetna as the Disability Claims Administrator, and Mondelez as the Plan Administrator. (*See* SPD at 25.) But the Plan elsewhere declares that "[t]he Plan Administrator [Mondelez] has delegated full fiduciary authority involving the determination of disability or Benefits under the Disability Plan to Aetna." (SPD at 6.) Reading the Plan as a whole, Mondelez is not the sort of "plan administrator" subject to suit under *Mein*.

Plaintiff notes that the Plan also designates Mondelez as "Plan Sponsor," suggesting that Mondelez may be subject to suit on that basis. (SPD at 25.) But ERISA defines an administrator as a plan sponsor only if the plan does not designate an administrator in the plan itself. *See* 29 U.S.C. § 1002(16)(A)(ii). Plaintiff's reliance on *Friedman v. Pension Specialists, Ltd*., No. 11-cv-5057, 2012 WL 983784 (N.D. Ill. Mar. 19, 2012), is not to the contrary. In *Friedman*, the court held that a plan sponsor could be sued "because it acted as the Plan administrator and controlled

17

benefit distribution payments." *Id*. at *3. As discussed above, however, Mondelez does not control benefit distribution payments, and Aetna, not Mondelez, makes benefit eligibility determinations. Moreover, the plaintiff in *Friedman* brought suit for breach of fiduciary duty, among other state law theories. *Id*. at *2–3 (construing claims as seeking relief under 29 U.S.C. §§ 1109, 1132(a)(2)). Robinson, meanwhile, has styled her Complaint as one under § 1132(a)(1)(B) for payment of benefits. (*See* Compl. ¶¶ 1, 6, 47.) Thus, of the two named defendants, only Aetna is a proper defendant to this suit. *See Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 913–16 (7th Cir. 2013) (holding that an insurer may be a proper defendant in a suit for benefits due under § 1132(a)(1)(B)).

Because Mondelez is not responsible for paying claims or making benefits determinations under the Plan, it is not subject to suit under Section 502(a)(1)(B). The court therefore dismisses Mondelez as a defendant.[13]

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [15] is granted in part and denied in part. Mondelez is dismissed as a Defendant in this case, and Aetna is directed to file an Answer to the Complaint on or before October 8, 2021.

ENTER:

Dated: September 15, 2021

REBECCA R. PALLMEYER
United States District Judge

[13] The dismissal of Mondelez as a Defendant does not affect the court's time-bar analysis. As explained in Part II, the deadline to file suit was tolled during the pendency of Plaintiff's voluntary appeals. Even if Plaintiff's voluntary appeal with Mondelez is no longer considered, she still gained four additional months to file suit while her voluntary appeal with Aetna was pending. Because she filed suit on August 7, 2020, less than four months after the June 30, 2020 deadline, her suit remains timely.