**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LAVERNE ROBINSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **No. 20-CV-4670** |
| | ) | |
| **AETNA LIFE INSURANCE COMPANY,** | ) | **Judge Rebecca R. Pallmeyer** |
| | ) | |
| **and** | ) | |
| | ) | |
| **MONDELEZ GLOBAL LLC** | ) | |
| **EMPLOYEE-PAID GROUP BENEFITS PLAN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Laverne Robinson brings this suit against Aetna Life Insurance Company ("Aetna") and Mondelez Global LLC Employee-Paid Group Benefits Plan ("the Plan") for unpaid long-term disability ("LTD") benefits under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"). Robinson, a former Mondelez employee, is eligible to receive benefits under the Plan, for which Aetna serves as the disability claims administrator ("DCA"). To qualify for the Plan's LTD benefits for more than 24 months, Robinson needed to "be receiving" Social Security Disability Insurance ("SSDI") from the Social Security Administration ("SSA") by October 29, 2018. Robinson did not meet that deadline, but, in March 2020, the SSA awarded Robinson SSDI retroactively effective as of October 1, 2016. Per Aetna's interpretation of the Plan, this retroactive award made no difference: Because she was not receiving SSDI on October 29, 2018, Robinson was ineligible for further payment. Robinson claims Aetna's interpretation violates ERISA.

The parties have filed cross-motions for summary judgment [50, 53]. Robinson contends that Aetna's interpretation is arbitrary and capricious because it fails to account for Robinson's retroactive SSDI award [52]. Defendants argue that Aetna's interpretation is reasonable and that

Robinson's claim is time-barred [56]. For the reasons discussed below, the court grants Robinson's motion for summary judgment and remands the case to Aetna to determine whether, apart from the timing of her SSDI award, Robinson is otherwise eligible for benefits under the Plan.

## BACKGROUND

**I.     Mondelez Global LLC Long-Term Disability Plan Provisions**

For 24 years, Plaintiff Laverne Robinson worked as a utility machine operator at Mondelez Global LLC ("Mondelez"), a snack food company. (Pl.'s Rule 56.1 Statement of Material Facts [51] ("PSOF") ¶ 2; Administrative Record [54-1–8] ("ALIC") 0057.) Robinson, a union member, was eligible for benefits as outlined in the Mondelez Global LLC Long-Term Disability Plan SPD [Summary Plan Description] For Union Hourly Employees (as amended and restated effective as of January 1, 2012) ("the SPD"). (PSOF ¶ 1; ALIC 2063–90.) The SPD's terms, incorporated in the Plan by specific reference (PSOF ¶ 5; Defs.' Rule 56.1 Statement of Material Facts [55] ("DSOF") ¶ 4), establish the following requirements for LTD coverage:

> **For the First 30 Months (first 24 months of LTD) of Disability**
> **"Own Occupation"** Disability (applies for the entire A&S[1] period and for the first 24 months of LTD):
>
> For the first 30 months of a disability period (6 months of A&S and the first 24 months of LTD), you will be considered disabled under the LTD Plan if, due to a physical or mental impairment caused by Injury or Sickness:
>
> > • You are continuously unable to perform he Material or Substantial Duties of your Own Occupation
> >
> > AND
> >
> > • You are not Gainfully Employed except for partial disability or rehabilitative employment for which you have Disability Earnings
> >
> > AND
> >
> > • You are receiving Appropriate and Regular Care for Your Condition from a Doctor whose specialty or expertise is the most appropriate for your

---

[1]     A&S refers to "Accident and Sickness." (ALIC 2084.) According to the Plan, the "A&S period" appears to refer to a 26-week period when an employee is not able to work. (*Id.*) A&S benefits are not part of the Plan, and Robinson's eligibility for A&S benefits is not at issue here.

disabling condition(s) according to Generally Accepted Medical Practice. The care provided to you should be of demonstrable medical value for your disabling condition(s) and should continue until Maximum Medical Improvement is achieved and thereafter as is appropriate.

**After 30 Months of Long Term Disability**
**"Any Occupation"** Disability (applies after the end of the "Own Occupation" disability period):

After you have been determined by the DCA to have been disabled under the LTD Plan for 30 months, (the 6 month period followed by the initial 24 months of LTD) you will be considered disabled for LTD Plan purposes if, due to a physical impairment caused by an Injury or Sickness the DCA determines that:

> • You are continuously unable to engage in Any Occupation that provides you with a salary of at least 60% of your Pre-Disability Earnings, and exists within your geographical area

> AND

> • You are not Gainfully Employed, except for partial disability or rehabilitative employment for which you have Disability Earnings

> AND

> • You must be receiving Social Security Disability Income (SSDI) benefits by the end of your 24th month of LTD in order to be considered disabled for LTD purposes beyond the first 24 months of LTD.

(PSOF ¶ 5; ALIC 0274.)

While the above terms apply to union employees, the Plan treats non-union employees

differently. The Plan's SPD for "Non-Union Hourly Employees" states:

> **Important note regarding Social Security Disability Income.** If you have not received a determination of disability for SSDI purposes by the end of your initial 24 months of LTD, you will not be considered disabled for LTD purposes beyond the initial 24 month period. If, however, you receive a determination of SSDI relating back to your disability date at Mondelez Global within 24 months of the end of your initial 24 months of LTD, the DCA will determine that you are disabled retroactively to the end of your initial 24 month period of LTD, provided that you satisfy all other applicable terms and conditions for a determination of LTD.

(ALIC 2104–05.) The non-union SPD thus expressly accounts for retroactive SSDI awards, while

the parallel provision for union employees includes no such language.

The Plan terms for union employees also include the following note:

> **Important note regarding Social Security Disability Income:** You **must** apply for Social Security disability benefits as soon as you are approved for LTD. In order to be considered for LTD benefits beyond the first 24 months of LTD, you **must be receiving** Social Security disability benefits by the end of your 24th month

3

of receiving LTD Benefits. The DCA can help you with the Social Security application process.

(DSOF ¶ 17; ALIC 2072.)

The Plan also includes multiple provisions concerning income offsets and overpayment provisions. The SPD states that "[o]nce your gross Benefit has been calculated, it will be reduced by Deductible Sources of Income." (ALIC 2072.) One such deductible source of income enumerated in the SPD is "Social Security disability income or retirement benefits." (*Id*.) Additionally, the Plan includes several provisions regarding overpayment of benefits, including the following statement:

> **What Happens if You Receive an Overpayment of LTD Benefits?**
> An overpayment may occur when you receive a retroactive payment from a Deductible Source of Income, when the DCA inadvertently makes an error in the calculation of your Benefit or if participant fraud occurs. The overpayment amount is an amount paid in excess of the amount that should have been paid under the LTD Plan.

(ALIC 2082.) In tandem with the overpayment provisions, the Plan includes a "Right of Recovery" provision, which states that "[i]f the amount of the payments made by this Plan is more than it should have paid under the rules in this Article, the Plan may recover the excess by reducing future Benefit payments, obtaining repayment from the Participant or as otherwise provided in the Guideline of Benefits." (ALIC 0916.) Per the SPD, a repayment plan "will include a lump sum repayment feature." (ALIC 2082.) The Plan further instructs that if Aetna fails to fulfill its fiduciary duty to recover overpayments, Aetna shall reimburse the employee-funded trust in an amount equal to the overpayment. (ALIC 2172.)

## II. Plaintiff Robinson Applies for LTD and SSDI Benefits

These several terms became relevant to Robinson on April 29, 2016, when she ceased working due to several serious cardiac health issues. (PSOF ¶ 6; DSOF ¶ 1.) For the first several months that Robinson could not work, Robinson received short-term disability benefits under the

4

Plan.  (PSOF ¶ 7.)  Then, in October 2016, she filed a claim for LTD benefits, which Aetna[2] approved on October 28, 2016, notifying her of an award in the amount of $2,672.80 per month before offsets.  (*Id.* ¶¶ 7–8.)  Aetna instructed Robinson to apply for SSDI benefits and provided her with an informational brochure from Allsup, a third-party vendor that represents individuals in Social Security disability claims and that, according to Aetna's notes from October 28, would review Robinson's file.  (PSOF ¶ 8; Defs.' Resp. to PSOF [65] ("DRPSOF") ¶ 8; Answer [40] ¶ 18.)  Aetna's October 28 letter also advised Robinson that if she did not provide Aetna with a copy of her SSDI determination letter by the end of her "Own Occupation" disability period, she would no longer be considered disabled for Plan purposes, "even if [Robinson were] later determined to be disabled for SSDI purposes."  (DRPSOF ¶ 8; ALIC 0568–69.)  Robinson also spoke to Aetna over the phone on October 28.  During that call, Robinson asked Aetna about assistance from Allsup for her SSDI application, and Aetna gave Robinson the Allsup phone number.  (ALIC 0021.)

In the following months, Robinson began the process of applying for SSDI.  On November 3, 2016, according to Aetna's records, Allsup reviewed Robinson's file but initially decided not to offer her representation because, for reasons the record does not further explain, "it d[id] not appear [Robinson] meets SSDI criteria."  (DRPSOF ¶ 8; ALIC 0037.)  According to that same note, Allsup planned to review Robinson's claim again six months later but, per Mondelez's instructions, would not initiate contact with Robinson in the meantime (ALIC 0037); the reasons for this instruction are also unexplained.  Additionally, because the record does not contain Allsup's communications with Robinson, it is not clear whether Allsup only informed Aetna of its decision not to represent Robinson, or whether it also communicated with Robinson herself about this.

---

[2]     At some point during the internal processing of Robinson's claim—the record is not clear when—the Hartford Life and Accident Insurance Company acquired Aetna.  For ease of reference, the court will call the insurance entity in this case "Aetna" unless quoting material from the record that refers to Hartford as the DCA.

It appears from the record that Robinson was in fact unaware of Allsup's decision: on January 9, 2017, Robinson contacted Aetna to ask which vendor she should expect to contact her and assist her with the SSDI application. (PSOF ¶ 10.) Aetna responded by calling Robinson two days later and again providing her with Allsup's phone number. (*Id.*; DRPSOF ¶ 10.) During that call, Robinson reported to Aetna that she had applied for SSDI benefits on her own that same day. (ALIC 0012.) There is no evidence that Aetna advised Robinson that Allsup had declined to represent her before the SSA. (PSOF ¶ 10; ALIC 0012.)

On August 22, 2017, Robinson informed Aetna that the SSA had denied her initial application for SSDI benefits, but that she intended to appeal the denial. (PSOF ¶ 12.) That same day, Aetna closed vocational rehabilitation services for Robinson, listing in their internal notes several reasons why, including Robinson's work limitations; her medical problems; Aetna's conclusion that she was unlikely, given her education level, to find a job that paid well; and Aetna's observation that Robinson believed she was unable to work "and is not motivated to work." (ALIC 0059, 0061.)

A week later, on August 31, 2017, Aetna noted that Allsup had reviewed Robinson's case and deemed her a viable candidate for SSDI claim assistance. (PSOF ¶ 14.) Defendants have not explained when or why Allsup, after initially declining to represent Robinson, reversed course. Aetna's notes show that, after learning of Allsup's decision, Aetna "facilitate[d] a warm transfer to Allsup's Disability Resource Center,"— the record explains neither what a "warm transfer" is nor the function served by "Alsup's Disability Resource Center." (ALIC 0062.) As of September 21, Aetna noted that Robinson had not yet signed the necessary forms for Allsup to represent her in front of the SSA; the record does not reveal who sent Robinson such forms (or when). (ALIC 0065.) On October 16, Allsup received Robinson's signed appointment of representation and authorization forms, and Aetna forwarded the medical records in its possession to Allsup. (ALIC 0069.) On October 30, Aetna documented that Allsup had submitted Robinson's SSDI application

to the SSA and reported it would "follow up for a decision" with the SSA, which, per Aetna's notes, Allsup stated "can take approximately 4-6 months."  (PSOF ¶ 15; DRPSOF ¶ 15; ALIC 0074.)

## III.    SSDI Application is Denied

The SSA did indeed issue a decision about four months later:  On February 8, 2018, the SSA denied the SSDI application that Allsup had submitted on Robinson's behalf.  (PSOF ¶ 16.) Aetna's notes show that Allsup reviewed Robinson's claim denial and, on February 14, submitted a request for reconsideration on Robinson's behalf and would "follow up for a decision which at this level can take approximately 3-5 months."[3]  (DRPSOF ¶ 16; ALIC 0081, 0083.)  If this estimate held, Robinson would hear back by July 2018, three months prior to the October 29 deadline by which she needed to "be receiving" SSDI to qualify for further LTD benefits under the Plan.

On May 10, 2018, Aetna spoke with Robinson by phone to inquire about her SSDI application.  (PSOF ¶ 19; DRPSOF ¶ 19.)  Aetna's notes show that it warned Robinson during that call that unless she were approved for SSDI prior to the end of October 2018, she would no longer be eligible for LTD benefits after that month.  (ALIC 0007.)  According to those notes, Aetna also advised Robinson that she could continue to pursue SSDI benefits and "they may be her only benefit if she is not approved by 10/2018."  (*Id.*)  Aetna pointed out "filing for SSDI is a lengthy process and can [take] up to 18 months or longer to get approved,"[4] meaning that it is important to submit SSDI filings at "start of LTD to prevent eligibility issue of any occ[upation] review."  (*Id.*)

---

[3]     The court is uncertain whether Aetna was stating that the process would take approximately three to five months, or was simply restating Allsup's prediction.  (*See* ALIC 0083.)

[4]     It is not entirely clear whether Aetna meant that the entire process (absent reapplication and appeals) can take 18 months or longer, or whether the initial process alone can take 18 months or longer.  If the former, Aetna would have expected that Robinson could be receiving SSDI benefits by June 2018, about four months prior to the deadline.  If the latter, Aetna would have recognized that it was most unlikely that a claimant could meet the Plan's 24-month deadline for receiving SSDI if the SSA rejected the claimant's initial application.  (*See* ALIC 0007.)

On May 19, 2018, the SSA denied Robinson's request for reconsideration, and, on May 30, Allsup requested a hearing with an administrative law judge ("ALJ") on Robinson's behalf. (PSOF ¶ 20.)  On May 30, Aetna documented that Allsup would "prepare a written brief, if appropriate, and follow up for a hearing date which can take approximately 12-18 months to schedule."  (ALIC 0100.)  Allsup continued to represent Robinson before the SSA (*see* ALIC 0164), but, given that timeline, it was clear that Robinson would not meet the October 29, 2018 deadline for receiving SSDI benefits to qualify for further LTD benefits under the Plan.

It is undisputed that Robinson continued to pursue her claim for disability benefits, and Aetna continued to collect her medical records.  Evidence of her physical condition is mixed: On June 12, 2018, Forrest Robinson, D.O., Robinson's primary care physician, drafted a letter—the parties do not specify to whom, but it appears to be to an electricity provider—stating that Robinson has "severe cardiac conditions" including "heart valve replacement, [stroke], A-fib and a Pacemaker," and urging that the company refrain from shutting off Robinson's electricity.[5]  (ALIC 0556.)  During an examination a few weeks later, though, Dr. Robinson noted that Robinson had a normal heart rate and rhythm, no chest pain, and that her stroke recovery and replaced heart valve were "stable."  (ALIC 0535–37.)

## IV.    LTD Benefits are Denied / First and Second-Level Appeals

In a September 24, 2018 letter, Aetna informed Robinson that it would terminate payment of her LTD benefits effective October 30, 2018, because she had not satisfied the "Any Occupation" SSDI precondition under the Plan.  (PSOF ¶ 23; DRPSOF ¶ 23; ALIC 2007.)  Aetna

---

[5]    This is not the only letter from Dr. Robinson in Aetna's records.  On May 7, 2018, for example, Dr. Robinson completed an attending physician statement at Aetna's request, in which Dr. Robinson opined that Robinson was "permanently incapacitated" and disabled due to her history of stroke, paroxysmal atrial fibrillation, and heart valve replacement surgeries.  (PSOF ¶ 17.)  That same day, Dr. Robinson expressed in a corresponding Capabilities and Limitations Worksheet that Robinson was unable to maintain gainful employment.  (PSOF ¶ 18; ALIC 0610.)  The doctor noted that Robinson could only occasionally engage in most workplace activities, that she could not lift more than ten pounds, and that although she could stand frequently, she could never perform tasks requiring fine or gross manipulation.  (PSOF ¶ 18; ALIC 0610.)

did so, and Robinson did not receive Plan benefits after October 2018. (ALIC 0286.) The SPD language provided for an appeal of this decision: "If you disagree with the DCA's decision to deny your claim, either in whole or in part, you or your authorized representative can file an appeal." (ALIC 2084.) The parties refer to this as the "first-level appeal." Then, according to the SPD, "If your appeal is denied, you or your authorized representative can file a second level of appeal with the DCA." (ALIC 2085.) If that second-level appeal is denied, the Plan states that the DCA will provide a statement describing "any voluntary Appeal procedures offered by the Plan and the Claimant's right to obtain information about such procedures, including a statement of the Claimant's right to bring a civil action under section 502(a) of [ERISA] following an Adverse Benefit Determination on review[.]" (ALIC 0923.)

On March 21, 2019, Robinson submitted a first-level appeal of Aetna's decision to reject her LTD benefits. (PSOF ¶ 24; ALIC 0494.) In an April 3, 2019 letter, Dr. Robinson again detailed Ms. Robinson's cardiac ailments and opined that "her status is totally incapacitated permanently" such that "[s]he is not capable of becoming employed and performing any tasks that will be required on a daily basis." (PSOF ¶ 25; DRPSOF ¶ 25; ALIC 0493.) (ALIC 0493.) On April 10, 2019, Aetna denied Robinson's appeal and upheld the termination of her LTD benefits. (PSOF ¶ 27; DRPSOF ¶ 27.) Aetna's determination letter made no reference to Dr. Robinson's observations or to Ms. Robinson's medical situation generally; it is clear from the letter that the denial decision rested solely on the fact that Robinson was not yet receiving SSDI benefits by October 29, 2018. (DSOF ¶ 32; ALIC 2013.)

The following day, Allsup informed Aetna that the SSA had scheduled Robinson's SSDI hearing for August 5, 2019; whether Aetna told Allsup at that time that it had denied Robinson's claim the previous day is not clear from the record. (PSOF ¶ 28; ALIC 0128.)

On May 9, 2019, through counsel, Robinson wrote to Aetna, noting that it was "unclear" when the SSA would render its decision on her SSDI claim, and requesting "that Aetna toll Ms. Robinson's appeal period indefinitely until after" that decision was made. (DSOF ¶ 33; ALIC

0360.)  Aetna responded in a May 21, 2019 letter, stating that "if Ms. Robinson continues to disagree with Aetna's determination, she has 60 days to submit a final appeal.  We can not toll a claim that is not appealed.  We also will not toll a claim indefinitely."  (ALIC 0364; DSOF ¶ 34; DRPSOF ¶ 30.)

On June 3, 2019, Robinson's attorney submitted a second-level appeal of Aetna's April 10, 2019 decision to uphold the termination of her LTD benefits.  (PSOF ¶ 31; DSOF ¶ 35; ALIC 0337.)  In that submission, counsel again requested that Aetna toll the appeal period until October 31, 2019, arguing that tolling was appropriate because the SSA's decision "is crucial to her entitlement to LTD benefits under the Plan."  (DSOF ¶ 35; ALIC 0337, 0338.)  In its June 7 response, Aetna granted counsel's request to submit "additional information" for Aetna's consideration, directing counsel to do so within 30 days, but made no mention of the request for tolling of the appeal deadline.  (DSOF ¶ 36; ALIC 0653.)  The record does not show how Robinson's counsel responded to this letter.

Aetna completed its review of Robinson's second-level appeal later that month and upheld the termination decision for the same reason set forth earlier: Robinson did not meet the SSDI precondition for the "Any Occupation" definition of disability.  (PSOF ¶ 32; DRPSOF ¶ 32.)  In a June 30, 2019 letter, Aetna advised Robinson that her appeal had been denied and, with respect to Robinson's request for tolling, explained:

> We acknowledged your request to toll the claim until the SSA renders a decision regarding Ms. Robinson's entitlement to SSDI benefits.  Since the SSA hearing is after 24 months of her LTD benefits, or after October 29, 2018, the SSA determination would not be relevant to this determination.  According to the plan, Ms. Robinson must be receiving SSDI benefits by the end of her 24 months of LTD, or by October 29, 2018.

(DSOF ¶ 37; ALIC 2021.)  Aetna also informed Robinson that she could file a civil action for benefits under ERISA Section 502(a) "no later than one year following the final decision of your claim under these claim procedures."  (PSOF ¶ 32; ALIC 2022.)  The letter did not explain that this was a final decision, or that the limitations period began to run as of June 30, 2019—the

letter's date.  Instead, Aetna's letter informed Robinson that she could file a voluntary appeal to Mondelez's benefits department, and said nothing about whether pursuing this voluntary appeal would toll the limitations period for bringing a civil action under ERISA:

> If you disagree with this appeal determination, you or your authorized representative can file a voluntary appeal with the Benefits Department of Mondelez Global LLC.  This appeal is optional; it is not required by the plan.  The Benefits Department, acting on behalf of Mondelez Global LLC, as plan sponsor, retains discretion to decide whether to pay claims under this voluntary appeal process.  Voluntary appeals should be filed within 90 days after receipt of the second level appeal denial by the DCA.  The Benefits Department will give you a final decision on your appeal within 60 days after it is received.  However, the Benefits Department may take up to an additional 60 days to review your claim.  In this case, you will be notified of the extension ahead of time.

(DSOF ¶ 41; ALIC 2022.)

## V.    Robinson Pursues Voluntary Appeal

On July 12, 2019, Robinson submitted to Mondelez a notice of intent to submit a voluntary appeal and requested that Mondelez provide her with a copy of all plan documents governing her LTD benefit claim.  (PSOF ¶ 33.)  On August 12, 2019, Aetna referred Robinson to Mondelez's benefit department to obtain a complete copy of all plan documentation, and the Mondelez benefits department provided her with a copy of the Plan on August 22, 2019. (*Id.* ¶ 35.)  In the meantime, her SSDI benefit claim proceeding continued, and Robinson attended a hearing before an ALJ on August 5.  (*Id.* ¶ 34.)

On September 19, 2019, Robinson's attorney wrote to Mondelez's Senior Manager of Global Benefits Compliance.  The first sentence of that letter states, "We hereby submit a formal, voluntary appeal of [Aetna's] June 30, 2019 decision to uphold its prior termination of Laverne Robinson's [LTD] benefits."  (*Id.* ¶ 36; ALIC 0210–21.)  The substantive arguments in the letter, however, concerned provisions not in the Plan that Mondelez had provided, but in a different ERISA policy, referred to as the "Group Policy."  Robinson's attorney noted that he had access to that other policy because he served "as local counsel in a lawsuit filed by another Mondelez employee," and that the Group Policy was effective on January 1, 2017.  (DSOF ¶ 43; ALIC 0246–

47.)  Robinson (or her attorney) evidently believed her claim rested on the Group Policy.  For example, a bolded subheading in the letter stated, "Group Policy No. GP-468541-GI Controls Ms. Robinson's LTD Claim."  (ALIC 0249.)  Also in that letter, Robinson's attorney asserted that Robinson "remained entitled to LTD benefits from October 30, 2018 through the present" because "1) Group Policy No. GP-468541-GI governs her LTD claim and has done so since its effective date of January 1, 2017 . . .; and . . . Ms. Robinson satisfies the Policy's test of disability."  (DSOF ¶ 44; ALIC 0249.)  In concluding the letter, Robinson's attorney wrote "it is clear that Ms. Robinson is entitled to LTD benefits from October 30, 2018 through the present and for so long as she continues to satisfy Group Policy No. GP-468541-GI's test of disability."  (DSOF ¶ 45; ALIC 0254.)  That same day, Robinson also submitted the letter to Aetna.  (ALIC 0237, 1578.)

As Robinson has now conceded, her attorney's belief that the Group Policy governed Robinson's claim was mistaken:  The Group Policy is a distinct ERISA plan from the Plan.  The two plans contain distinct provisions and have separate claims procedures.  (DSOF ¶¶ 6, 12, 43.)  For union employees, benefits under the Plan are paid by a trust funded with union member contributions, whereas benefits under the Group Policy are insured and paid by Aetna.  (DSOF ¶¶ 9, 10, 43.)

In its response to counsel's letter, the Mondelez Benefits Center made no mention of the policy confusion.  The October 9, 2019 response simply stated that "Mondelez International has reviewed your appeal and advised that your request in the appeal cannot be addressed by Mondelez.  The appeal will have to be submitted to The Hartford instead.  The Hartford (formerly Aetna) determines if an LTD claim is approved or denied."  (ALIC 0185.)  The Mondelez Benefits Center further stated, "We suggest that you appeal this decision with The Hartford again, or possibly inquire about a next-level appeals process with them."  (*Id*.)

From the record, it is unclear why Mondelez sent Robinson back to Aetna instead of following the procedures outlined in Aetna's June 30, 2019 letter.  The October 9 letter does not make clear whether Mondelez understood Robinson to be seeking benefits under the Plan or the

Group Policy; the letter does not mention either plan by name.  (*See id.*)  The record also does not indicate that Mondelez was aware of the directions Aetna gave Robinson in the June 30, 2019 letter.

Following Mondelez's instructions in the October 9, 2019 letter, Robinson's attorney requested on November 1, 2019 that Aetna "assess that [September 19] voluntary appeal submission."  (DSOF ¶ 47; ALIC 0237.)  Robinson's attorney sent this letter via fax, and the fax transmission included an illegible photo of Mondelez's October 9 letter.  (ALIC 0239.)  On November 7, 2019 Aetna responded, asking Robinson to send to Aetna a legible copy of the letter from Mondelez, which Robinson's counsel did on December 9.  (ALIC 2022, 0222–0235.)  Aetna then wrote to Robinson on January 10, 2020,[6] informing her and her attorney that the Group Policy does not apply to Robinson because her claimed disability date of May 1, 2016 occurred prior to the Group Policy's effective date of January 1, 2017.  (DSOF ¶ 50.)

In another letter, this one dated January 13, 2020, Robinson, through her attorney, urged that the Group Policy "governs" Robinson's claim, and requested "that Hartford assess Ms. Robinson's claim accordingly," meaning under the Group Policy's coverage.  (*Id.* ¶ 23; ALIC 0182).  On January 31, Aetna wrote back, finally pointing out that the Plan governing union hourly employees "is the plan that was in effect as of the day of her disability of April 1, 2016."  (ALIC 2023.)  "Therefore," Aetna wrote, the Plan—not the Group Policy—"is the correct plan."  (DSOF ¶ 53; ALIC 2023).  That letter made no mention of Robinson's appeal rights; it was thus unclear whether Robinson still had a right to a voluntary appeal under the Plan or whether the limitations period for bringing an ERISA claim had begun to run.

The following month, on February 14, Robinson, through counsel, requested that Aetna "confirm in writing whether . . . [Aetna] will be taking any further action regarding Ms. Robinson's long-term disability benefit appeal" and whether Ms. Robinson had exhausted her administrative

---

[6]     This email is not in the record, but parts of its contents are referenced in a letter to Aetna from Robinson's counsel dated January 13, 2020.  (ALIC 0182.)

remedies. (DSOF ¶ 54; ALIC 0181.) Aetna responded on March 4, confirming that it would take no further action on Robinson's claim and that she had exhausted her administrative remedies. (DSOF ¶ 55; ALIC 2023–24.)

## VI.     SSDI Benefits Awarded Retroactive to October 2016

On March 27, 2020, the SSA informed Robinson that it had determined that she was entitled to SSDI benefits with a retroactive effective date of October 1, 2016. (PSOF ¶ 40; ALIC 0002.) Aetna learned of this award no later than April 23, 2020; on that date, Aetna documented in its internal notes that Robinson was entitled to SSDI benefits at $1,693 per month retroactive to October 1, 2016 and increased by $23 per month effective January 1, 2017. (PSOF ¶ 41; ALIC 0161.) Aetna determined it was therefore entitled to $41,193.67 in the form of an overpayment on Robinson's LTD claim pursuant to the offset and overpayment provisions of the Plan. (PSOF ¶ 41, ALIC 0164; *see also* ALIC 0930, 2055.) Aetna requested that Robinson repay it in full that same day. (PSOF ¶ 41; ALIC 2024.) The next day, on April 24, 2020, Allsup recovered $41,193.67 from Robinson, which Aetna noted on May 15, 2020. (PSOF ¶ 42; ALIC 0164.)

## VII.     Robinson's Court Challenge

On April 17, 2020, Robinson filed a lawsuit before Judge Gettleman of this court, *Robinson v. Hartford Life & Acc. Ins. Co.*, No. 1:20-cv-02383, in which she claimed to be entitled to payment of benefits under the Group Policy. (DSOF ¶ 57.) Hartford moved to dismiss that case under FED. R. CIV. P. 12(b)(6), arguing that the Group Policy did not apply to Robinson's claims because that policy was not in effect at the time of the onset of her disability. (*Id.* ¶ 58.) On August 6, 2020, Robinson voluntarily dismissed that lawsuit without prejudice. (*Id.* ¶ 59.)

The following day, on August 7, 2020, having exhausted all pre-litigation appeals as required by ERISA § 503, Robinson filed this suit, alleging that Aetna and Mondelez violated ERISA § 502(a)(1)(B) by failing to meet their fiduciary obligations under ERISA to ensure an accurate claim decision. 29 U.S.C. §§ 1133, 1132(a)(1)(B). Robinson additionally asks for attorney fees pursuant to § 502(g). 29 U.S.C. § 1132(g).

14

Aetna and Mondelez moved to dismiss Robinson's complaint [15]. This court granted the motion with respect to Mondelez, but otherwise denied it [29]. *Robinson v. Aetna Life Ins. Co.*, No. 20 C 4670, 2021 WL 4206785 (N.D. Ill. Sept. 15, 2021). The court concluded that Robinson had adequately alleged that Aetna's interpretation of the Plan was arbitrary and capricious in failing to account for Robinson's retroactive SSDI award and penalizing her for something over which she had no control: the SSA's pace for processing her application and appeals. *Id.* at *5. The court also determined that Robinson's claim was timely. *Id.* at *8.

On October 26, 2021, Robinson filed her First Amended Complaint, naming the Plan as an additional defendant [35]. Now before the court are the parties' cross-motions for summary judgment [50, 53]. Robinson argues that the undisputed facts of this case show that Aetna abused its discretion when it interpreted and applied the Plan's terms regarding receipt of SSDI benefits to Robinson's LTD benefit claim. Robinson further argues that she has satisfied the Plan's remaining requirements for LTD benefits. She requests that the court enter judgment against Aetna and order payment of benefits. Defendants argue that the record demonstrates that Aetna reasonably determined that Robinson failed to satisfy the Plan's "Any Occupation" definition of disability. Defendants also argue that Robinson's claim is time-barred because she failed to file the present lawsuit within the Plan's one-year time limit for commencing legal action and is not entitled to a tolling of that deadline.

## DISCUSSION

Summary judgment is proper if the evidence as a whole demonstrates no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *King v. Ford Motor Co.*, 872 F.3d 833, 837 (7th Cir. 2017). When evaluating cross-motions for summary judgment, courts draw all reasonable inferences in favor of the party against whom the motion under consideration was made. *Juday v. FCA US LLC*, 57 F.4th 591, 594 (7th Cir. 2023).

15

I.      **Timeliness**

Defendants argue that Robinson's claim is time-barred because it was not filed within one year of June 30, 2019, when Aetna denied Robinson's second-level administrative appeal. Relying on this court's prior ruling, Robinson argues that the court should toll the limitations period and find her claim timely.  Upon denying Defendants' motion to dismiss, the court found that the Plan's one-year limitations period was tolled "for at least 4.5 months during the pendency of [Robinson's] appeals, rendering Plaintiff's suit timely." *Robinson*, 2021 WL 4206785, at *8.  The court agrees with Robinson that no record materials defeat that earlier conclusion.

ERISA plans may contain reasonable time limits for filing legal actions, and such limits are valid and enforceable.  *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013). Courts have found that a one-year time limit for commencing a lawsuit is reasonable.  *Id.* at 109; *see also Di Joseph v. Standard Ins. Co.*, 776 F. App'x 343, 348 (7th Cir. 2019) ("We have found seven months between exhaustion of administrative remedies and a contractual deadline to file suit to be reasonable.") (citing *Abena v. Metro. Life Ins. Co.*, 544 F.3d 880, 883–84 (7th Cir. 2008)).  The Plan establishes a one-year time limit for filing a civil action (DSOF ¶ 23), which, on its face, is reasonable.

"To the extent the participant has diligently pursued both internal review and judicial review but was prevented from filing suit by extraordinary circumstances, [however,] equitable tolling may apply." *Heimeshoff*, 571 U.S. at 114.  That language is relevant here:  Robinson diligently pursued appeals that she reasonably believed she was entitled to, based on representations made by Aetna and Mondelez.  Communications from Aetna and Mondelez, up until March 2020, would lead a reasonable person to believe that they had not exhausted appeal rights under the Plan. Aetna's June 30, 2019 letter to Robinson informed her that she "must bring any civil action for benefits no later than one year following the final decision of your claim under these claim procedures," but that letter did not explain that the letter itself was the final decision that triggered the limitation period's clock.  (ALIC 2022.)  More confusingly, the letter informed Robinson that

she had the right to a voluntary appeal with Mondelez, without explaining how or whether such an appeal would bear on her timeline for filing a civil suit.

Then, when Robinson submitted her appeal to Mondelez on September 19, 2019, Mondelez instructed her to send that appeal to Aetna.  True, as Defendants emphasize, the substantive arguments Robinson's counsel raised in its voluntary appeal letter mistakenly referenced the Group Policy, an ERISA plan that does not govern Robinson's claim.  Still, Mondelez and Aetna must have understood that Robinson intended to submit a voluntary appeal under the Plan:  The letter's first paragraph states that Robinson and her counsel "hereby submit a formal, voluntary appeal of [Aetna's] June 30, 2019 decision to uphold its prior termination of Laverne Robinson's [LTD] benefits."  (ALIC 0210.)  Considering this plain statement, along with the additional evidence Robinson's counsel submitted with the voluntary appeal (including the Plan's SPD), reasonable claims administrators should have understood Robinson's submission as a voluntary appeal under the Plan, regardless of the substantive arguments that her counsel raised in the letter.  The court therefore disagrees with Defendants that Robinson abandoned her administrative appeal rights under the Plan by mislabeling the relevant plan in her voluntary appeal.

Furthermore, Mondelez instructed Robinson to follow up with Aetna, and she did so.  Upon its review of Robinson's voluntary appeal, Aetna discerned that Robinson was raising arguments about the wrong ERISA Plan.  But Aetna did not clear up the confusion with Mondelez and did not instruct Robinson to do so herself.  Aetna also did not tell Robinson that the limitations period for seeking rights under the Plan had not been tolled by her mistaken submission.  At several junctures, when it knew that Robinson was actively seeking review of the denial of benefits, Aetna could have made clear to Robinson that the limitations period was running but failed to do so.

In the end, Robinson did not receive clarification that Aetna would take no further action on her appeal until March 4, 2020, when Aetna responded to Robinson's counsel's request that Aetna state in writing the status of Robinson's internal appeal rights.  Even looking to the facts in

17

the light most favorable to Aetna, it is clear that Robinson diligently pursued her internal appeal rights up until March 4, 2020. The court therefore finds that the limitations period began to run on March 4, 2020. This suit—filed in July 2020, within six months of the date on which Aetna clarified that she had exhausted her appeal rights—is therefore timely.

## II.     Arbitrary and Capricious Review

Because the Plan grants discretionary authority to Aetna, the court assesses Aetna's determination under an arbitrary and capricious standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Under this deferential standard, the court "must ensure only that a plan administrator's decision has rational support in the record." *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 362 (7th Cir. 2017) (quoting *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011)).

Although this standard of review is highly deferential, the court need not "rubber stamp" a determination "when there is an absence of reasoning in the record to support it.'" *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010) (quoting *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774–75 (7th Cir. 2003)); *Lacko v. United of Omaha Life Ins. Co.*, 926 F.3d 432, 439 (7th Cir. 2019) (citing *Holmstrom*). "In some cases, the plan language or structure of the plan or simple common sense will require the court to pronounce an administrator's determination arbitrary and capricious." *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001).

In its earlier opinion, this court found that the Plan was silent regarding the application of retroactive SSDI awards. It further determined that Aetna's interpretation of the Plan, which disregards retroactive SSDI awards in cases like Robinson's, is arbitrary and capricious because it conditions a claimant's eligibility for LTD benefits on circumstances entirely out of her control: the SSA's highly variable timeframe for processing claims. Defendants challenge that conclusion, offering two bases for their interpretation: the provision's grammar, and a comparison to an analogous provision in another part of the Plan that supports Aetna's interpretation. Robinson

argues that those explanations are undercut by Aetna's fiduciary obligations.[7] The court addresses those points in turn.

### A. Grammar

An ERISA Plan's terms are to be "given primary effect and strictly enforced, and plan administrators must adhere to 'the bright-line requirement to follow plan documents in distributing benefits.'" *Young v. Verizon's Bell Atlantic Cash Balance Plan*, 615 F.3d 808, 818 (7th Cir. 2010) (quoting *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 302 (2009)). The Supreme Court has also stated that "employers have large leeway to design disability and other welfare plans as they see fit," and, "once a plan is established, the administrator's duty is to see that the plan is 'maintained pursuant to [that] written instrument." *Heimeshoff*, 571 U.S. at 108 (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003) and 29 U.S.C. § 1102(a)(1)).

The court's task is to ensure that the Plan's terms are enforced, not changed. *Id*. Accordingly, the question before the court is whether Aetna's interpretation of the Plan is arbitrary and capricious; the question is not whether the Plan's terms themselves are unfair. *See Cheney v. Standard Ins. Co.*, 831 F.3d 445, 451 (7th Cir. 2016) ("The policy may offer poor coverage to people with a chronic, gradually developing disability, but the propriety of that failing is not the question before us."); *Comrie v. IPSCO, Inc.*, 636 F.3d 839, 842 (7th Cir. 2011) (noting that a federal court may not rewrite contractual terms to be more beneficial to employees); *Williams v. Interpublic Severance Pay Plan*, 523 F.3d 819, 822 (7th Cir. 2008) (same).

---

[7] Robinson additionally argues that, because the Plan conditions eligibility on something beyond a claimant's control, it makes an illusory promise, which ERISA does not allow. (*See* Pl.'s Resp. at 3.) The court need not discuss that issue to resolve the parties' motions and so declines to address it at this time.

The "written instrument" is the Plan. More specifically, the provision at issue states a claimant "must be receiving [SSDI] benefits by the end of your 24th month of LTD in order to be considered disabled for LTD purposes beyond the first 24 months of LTD." (ALIC 2072.)

Aetna contends that its interpretation of the Plan was "based on a reasonable interpretation of the plan's language," and therefore must stand. *Wetzler v. Illinois CPA Soc. & Found. Ret. Income Plan*, 586 F.3d 1053, 1057 (7th Cir. 2009). Specifically, Aetna argues that the provision's grammar makes clear that "when the 24th month rolls around and the participant desires to apply for further LTD benefits, she must be receiving Social Security disability benefits at that time, not at a later time." (Defs.' Br. at 6.) Aetna says its interpretation reflects a common understanding of the Plan's language because the term "receiving" means "to come into possession of: acquire." (Defs.' Br. at 5.) Robinson did not come into possession of her SSDI benefits until after March 27, 2020. As a result, on Aetna's view, even though Robinson's retroactive award was *for* a disability that commenced on October 1, 2016, she did not *receive* those benefits by the end of October 2018, and that is all that matters.

Aetna's strict reading, however, disregards the fact that, as a result of Robinson's retroactive award, Robinson effectively was receiving SSDI benefits by the end of October 2018. The court therefore stands by its prior conclusion: "Because the SSA concluded that she was entitled to SSDI benefits beginning October 1, 2016, she effectively became eligible for continued receipt of LTD benefits within the Plan's 24-month window." *Robinson*, 2021 WL 4206785, at *7. By common sense, when something happens retroactively, it changes the conditions of the past; the verb tense of the Plan's provision does not alter the effect of retroactivity. *See Hess*, 274 F.3d at 461. The Plan can reasonably require that persons claiming disability promptly apply for SSDI benefits; it could also properly recognize that persons who recover SSDI benefits have satisfactorily demonstrated eligibility for Plan benefits, as well. To say that eligibility for Plan

20

benefits turns on the accident of the agency's timing, however, strikes the court as arbitrary and unreasonable. [8]

### B.    Plan Comparison

Aetna also argues that the lack of a retroactivity clause in the SPD governing union employee benefits was an intentional design feature of the Plan. According to Aetna, the fact that the SPD governing non-union employees does explicitly account for retroactive SSDI benefits demonstrates that the absence of a corresponding provision in the SPD governing union employees is an intentional result of the collective-bargaining process. (*See* Defs.' Resp. at 7–8 (citing *Thomas v. United Parcel Serv., Inc.*, 890 F.2d 909, 917 (7th Cir. 1989).) Aetna urges the court to take into account the difference between these provisions in construing the ERISA plan as a whole, giving each term its plain meaning without rendering any term superfluous. *Estate of Jones v. Child.'s Hosp. & Health Sys. Inc. Pension Plan*, 892 F.3d 919, 923 (7th Cir. 2018); *Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012).

The court disagrees that terms in the non-union SPD control the meaning of the provisions governing union members. Robinson's eligibility depends on the terms in the SPD governing union employees, and—whatever may be true of the provisions relevant to non-union members— that SPD is silent regarding retroactive SSDI awards. At most, a comparison of the two SPD's shows that Aetna's interpretation of the non-union provisions is reasonable; the language of the

---

[8]        Defendants' citation to *Carlson v. Northrop Grumman Severance Plan*, No. 13-cv-02635, 2022 WL 971873 (N.D. Ill. Mar. 31, 2022) (appeal filed) does not alter this conclusion. In *Carlson*, a group of employees alleged that their employer wrongfully denied them severance benefits. *Id.* at *1. To be eligible for a severance package under their benefits plan, the employees had to "have been notified in writing" by their managers that they are covered by the plan. *Id.* at *2. The court granted summary judgment to the plan administrator because the employee plaintiffs never received the memo. *Id.* at *6. *Carlson* involved severance benefits, not disability benefits, and an appeal from that ruling is pending. In any event, it appears that case would have relevance here only if the plaintiffs had eventually received the memo—or better yet, received the memo with a retroactive effective date. But that is not what happened; the *Carlson* plaintiffs did not retroactively satisfy the eligibility requirements under their benefits plan, and their situation is not comparable to Robinson's.

non-union SPD says nothing regarding the reasonableness of Aetna's administration of Robinson's claim.

### C.    Common Sense

Under some circumstances, "the plan language or structure of the plan or simple common sense will require the court to pronounce an administrator's determination arbitrary and capricious." *Hess*, 274 F.3d at 461. The court will not "rubber stamp" that determination if it defies common sense. *Holmstrom*, 615 F.3d 7at 766. The court finds that principle relevant here. ERISA requires Aetna to discharge its duties "solely in the interests of the participants and beneficiaries." *See Raybourne v. Cigna Life Ins. Co.*, 700 F.3d 1076, 1082 (7th Cir. 2012) (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008)). Yet Aetna refused to toll a deadline that it knew Robinson, through no fault of her own, could not meet.[9]

Aetna's interpretation is especially troublesome because, under the Plan's terms, the likelihood that a claimant will receive an SSDI award within the 24-month window may be a function of Aetna's own behavior in handling the claim. In multiple places, the SPD states, "The DCA can help you with the Social Security application process." (ALIC 2066, 2072, 2073.) In an October 2016 letter, when Aetna informed Robinson that she was eligible to receive LTD benefits, Aetna warned, "It is important that you apply for Social Security Disability Income benefits as soon as possible. Failure to timely apply for or receive Social Security Disability Benefits may impact your eligibility for LTD Plan benefits." (ALIC 0558.) Enclosed with that letter was a brochure for Allsup. (ALIC 0558, 0566.) But the following week, on November 3, 2016, Aetna noted that Allsup

---

[9]    Robinson makes additional arguments concerning a fiduciary's obligation to refrain from terminating benefits until it compiles a full record. (Pl.'s Br. at 8–10.) The question here, however, is not whether Aetna had a full record, but rather whether its interpretation of the "must be receiving" provision was reasonable. *See, e.g., Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807 (10th Cir. 2004) ("[I]f the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it."); *Reipsa v. Metro. Life Ins. Co.*, No. 01 CV 3407, slip op. at 15–21 (N.D. Ill. Jun. 11, 2002) (remanding claim to plan administrator when the administrator denied benefits based on a record that did not contain plaintiff's then-available SSDI award and vocational evaluation).

reviewed Robinson's claim and declined to offer her representation, that Allsup would "review the claim file again in 6 months" and that Allsup would "not initiate contact with this claimant per Mondelez." (ALIC 0037.) As a result, Robinson was left without support to file her SSDI claim for several months, a critical time period considering Aetna's instructions that she must apply "as soon as possible" due to the lengthy administrative process and tight deadline for LTD benefit eligibility. (ALIC 0558.)

Also potentially significant is Mondelez's instruction that Allsup not contact Robinson. For more than two months, contrary to statements in the SPD that Aetna could "help" Robinson with the SSDI application process, Aetna, Allsup, and Mondelez chose not to inform Robinson about Allsup's initial refusal to represent her before the SSA. Indeed, by January 9, 2017, Robinson was still unsure who would help her with her claim, so she reached out to Aetna to ask which vendor she should expect to hear from. (Answer [40] at ¶ 20.) Two days later, Aetna gave Robinson Allsup's phone number, but there is no evidence that Aetna informed Robinson that Allsup had declined representation. (ALIC 0012.)

Aetna's determination to deny Robinson's LTD claim because she was not yet "receiving" SSDI benefits by the end of October 2018 conflicts with the Plan's representation that Aetna would also help Robinson apply for SSDI. Robinson personally applied for SSDI in January 2017, but she could have applied several months earlier had Aetna, Allsup, and Mondelez not withheld from her Allsup's initial decision not to represent her in front of the SSA. Aetna's delay in assisting Robinson with the SSDI application, coupled with its decision to disregard her later-obtained favorable SSDI award, constitute a failure on the part of Aetna to discharge its duties "solely in the interests of the participants and beneficiaries." *See Raybourne*, 700 F.3d at 1082 (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008)).

### D.    Plan Structure

Finally, Robinson notes that although Aetna has turned a blind eye to her retroactive SSDI award for the purposes of finding her eligible for LTD under the "Any Occupation" definition of

disability, Aetna nevertheless chooses to recognize the award for the purposes of recouping overpayment of the benefits it had paid to Robinson. (Pl.'s Br. at 10–11.) The court agrees with Robinson that Aetna's recoupment suggests an inconsistency in its interpretation of Plan language. Aetna reaped a financial benefit from Robinson's retroactive SSDI award while simultaneously refusing to acknowledge that the retroactive award rendered her eligible to receive benefits under the Plan's "Any Occupation" LTD standard.

In *Lacko v. United of Omaha Life Insurance Co.* is instructive, the Seventh Circuit noted a concern about an ERISA fiduciary's potential conflict of interest:

> For instance, where the administrator assists the claimant in obtaining Social Security disability benefits, arguing that she is unable to engage in any work, and then after obtaining those benefits, denies disability benefits under its own plan, the self-dealing can signal that the administrator is acting in its own interests rather than that of the claimant. The Plan benefits in such a situation because it is often entitled to recover some of the Social Security benefit awarded to the claimant, and it avoids the payment of money to the claimant in denying benefits under its own plan. We have recognized that "this scenario justified the reviewing court in giving more weight to the conflict because the seemingly inconsistent positions taken by the insurer were both financially advantageous to the insurer."

*Lacko*, 926 F.3d at 440 (quoting *Raybourne*, 700 F.3d at 1088).

The inconsistency in this case is not identical, but still meaningful. Aetna can recoup the LTD benefits it pays to claimants, taking advantage of the award of SSDI benefits, regardless how unpredictable and lengthy the application process becomes. Aetna's interpretation conditions a claimant's long-term eligibility on whether the SSA renders a favorable determination in an arbitrary timeframe, but permits Aetna to recoup any overpayment for retroactive SSDI awards received at any later date.[10]

---

[10] Consider again Aetna's grammatical interpretation of the provision at issue. Aetna says that Robinson is not eligible for LTD benefits under the "Any Occupation" definition because she needed to "be receiving" SSDI by the end of October 2018: "the use of the present progressive tense in the phrase 'must be receiving . . . by the end' describes an event that must presently be occurring before another presently occurring event ends." (Defs.' Br. at 6–7.) Yet, concerning overpayment, the SPD states that "The overpayment amount is an amount paid in excess of the amount that should have been paid under the LTD Plan." (ALIC 2082.) The phrase "should have been" communicates that, based on a set of affairs at a prior time, something ought to have occurred, but did not. On Aetna's reading, Aetna "should have" paid Robinson less when she

Aetna is correct that recouping its overpayment from Robinson effectively safeguards assets held in trust for beneficiaries of the Plan. (Defs.' Reply at 9–10.) Aetna's efforts to recover payments set off by retroactive SSDI awards should be mirrored, however, by recognition of such awards for the purposes of determining a claimant's eligibility under the "Any Occupation" definition. Aetna's interpretation—which effectively assigns different meanings to the effect of retroactive SSDI awards in two different parts of the Plan—appears to be arbitrary and capricious. *See Reich v. Ladish Co.*, 306 F.3d 519, 525 (7th Cir. 2002).

## III.    Remedy

The Seventh Circuit has made clear that "the court is not the place to make the determination of entitlement to benefits," and "[t]he court must not substitute its own judgment for that of the administrator." *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 776 (7th Cir. 2003) (citing *Wolfe v. J.C. Penny Co., Inc.*, 710 F.2d 388, 394 (7th Cir. 1983)).

Robinson nevertheless argues that this court should set aside Aetna's determination and determine *de novo* that she was "unable to engage in Any Occupation" due to her heart condition. In support, Robinson relies on *Mohammed v. Prudential Insurance Co.*, No. 19 C 3258, 2020 WL 4569696 (N.D. Ill. Aug. 7, 2020) and *Morawski v. Local 703, I.B. of T., Grocery & Food Employees' Pension Plan*, No. 20 C 1889, 2021 WL 5049775 (N.D. Ill. Jan. 8, 2021). The courts in those cases held that an administrator may not, in a court proceeding, assert a new *post hoc* rationale for denying benefits that was not the basis for its initial denial. *See Mohammed*, 2020 WL 4569696, at *3 ("Courts will not countenance 'post hoc attempt[s] to furnish a rationale for a denial of . . . benefits in order to avoid reversal on appeal.'" (quoting *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 696 (7th Cir. 1992)). This case differs because, through the claims process and this

---

was receiving LTD benefits because she was doubly compensated by the Plan and SSDI. In other words, due to her retroactive SSDI award, Aetna concludes, Robinson effectively was receiving SSDI at an earlier date. Were Aetna's allegiance to the meaning of verbal phrases consistent across the provisions, at the time it paid Robinson her initial LTD benefits, she was not yet receiving SSDI, so it did pay the amount that "should have been paid" based on the set of affairs at that time.

litigation, Aetna has consistently maintained that it denied benefits because Robinson did not meet the SSDI precondition under the "Any Occupation" definition of disability.

Because Robinson did not satisfy the SSDI precondition, Aetna never evaluated whether she was "unable to engage in Any Occupation" due to her medical condition as of October 30, 2018 and thereafter. Additionally, the ALJ's decision and findings are not contained in the administrative record, and Robinson's counsel has not submitted the SSA's file to Aetna, so Aetna has not yet had an opportunity to assess whether Robinson meets the Plan's "Any Occupation" definition. Because the DCA "must have the first opportunity to decide the 'any occupation' issue," the court remands the matter to Aetna. *Pakovich*, 535 F.3d at 607 n.3.

## CONCLUSION

For the reasons set forth above, the court grants Robinson's motion for summary judgment [50] and denies Aetna's [53]. The court retains jurisdiction of this matter and remands Robinson's claim for Aetna to evaluate her eligibility for LTD benefits under the Plan's "Any Occupation" definition of disability. Aetna shall grant or deny Robinson's application on the merits within 120 days, and the parties are to submit a status report to the court on June 16, 2023.

ENTER:

Dated: February 16, 2023

_____
REBECCA R. PALLMEYER
United States District Judge